1  METINER G. KIMEL – Wa. State Bar No. 21280
   KIMEL LAW OFFICES
2  205 N. 40th Ave, Ste 205
   Yakima, WA  98908
3
   Telephone: (509) 452-1115
4  Special Counsel to the Ch. 7 Trustee
5
6
7
8
9                 IN THE UNITED STATES BANKRUPTCY COURT
10              FOR THE EASTERN DISTRICTION OF WASHINGTON
11
12

13  In re:  BASALT DINING LLC          | Case No. 22-00842
                                       | Adv. No.
14  ,
                                       | Chapter 7 Case
15           Debtor.
                                       | **COMPLAINT FOR RECOVERY OF**
16  _____  | **DAMAGES ARISING FROM AND A**
                                       | **CONSEQUENCE OF BREACH OF**
17  MATTHEW ANDERTON, Chapter 7 trustee of | **MANAGEMENT AGREEEMENTAND**
    the bankruptcy estate of BASALT DINING LLC; | **UNJUST ENRICHMENT.**
18
             Plaintiff,
19
20           vs.

21  COLUMBIA HOSPITALITY INC, a
    Washington corporation, and 1102 LLC, a
22  Washington limited liability company.

23           Defendants.

24

25          COMES NOW Matthew Anderton, the Chapter 7 Trustee (the "Trustee" or "Plaintiff") in

26  the above referenced bankruptcy case and the Plaintiff in the above referenced adversary

27  proceeding, who alleges and states as follows:

28

In re Basalt, Case No. 22-00842
Estate of Basalt v. Columbia Hospitality Inc.
Complaint to Avoid and Recover

23-80023-WLH   Doc 1   Filed 12/27/23   Entered 12/27/23 19:52:56   Pg 1 of 7

1. Basalt Dining LLC is a Washington limited liability company ("Basalt") formed under the laws of Washington State on February 12, 2019. At all times relevant hereto, Basalt was the owner of a restaurant facility and operations which was located inside the Hotel Windrow which is located at 502 North Main St., Ellensburg, WA (the "Building").

2. The ownership of Basalt is approximately 44.5% vested in Indigo Solutions LLC, a Washington LLC, ("Indigo") which in turn is 100% owned by Steve and Ruth Townsend.

3. 1102 LLC, is a Washington limited liability company formed on October 17, 2014. 1102 LLC owns the Building and leased the business premises to Basalt.

4. Columbia Management Inc., a Washington Corporation ("Columbia"), is a Washington corporation formed on December 27, 1995, with its principal place of business located at 2200 Alaskan Way, Suite 200, Seattle WA 98121.

5. Jurisdiction: The Court has jurisdiction over this adversary proceeding pursuant to 28 U. S. C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

**FACTUAL BACKGROUND AND**

**CAUSES OF ACTION**

6. Plaintiff re-alleges paragraphs 1 through 5 as if fully set forth herein.

7. This bankruptcy case was originally commenced on September 12, 2022, under Chapter 7 of the Bankruptcy Code.

8. The initial Chapter 7 §341(a) meeting of creditor in the case was held on November 11, 2022.

9. On or about August 14, 2019, Basalt entered into that certain Lease Agreement with 1102 LLC (the "Premises Lease"), wherein Basalt leased a 2200 square foot portion of the Building (the "Premises") for the purposes of operating a restaurant and associated kitchen facilities. A true and correct copy of the Premises Lease and amendments is attached hereto as Exhibit "1" and is incorporated herein by reference.

10. The Premises Lease requires at Section 6.1 that "Lessee shall operate the restaurant seven (7) days a week including all holidays."

In re Basalt, Case No. 22-00842
Estate of Basalt v. Columbia Hospitality Inc. and 1102 LLC
Complaint re; breach of operating agreement; unjust enrichment
23-80023-WLH    Doc 1    Filed 12/27/23 2-    Entered 12/27/23 19:52:56    Pg 2 of 7

11. This operating provision was subsequently modified by that certain First Amendment to Lease Agreement executed by Basalt and 1102 LLC on December 29, 2020, which added paragraph 6.1.1 to the Premises Lease and allowed the Lessee to reduce operations down from seven days per week to four (4) days per week until June 1, 2021, at which time the Lessee was required to resume operations at seven days per week. The provision was additionally qualified to provide that the "requirement will be postponed if there are governmental restrictions in place that restricted the restaurant and/or bar from operating at 100% occupancy, until such time as those restrictions are eliminated."

12. At the time of the execution of the Premises Lease the Building was being renovated for the purpose of being operated as a hotel.

13. Because the Building had no restaurant or kitchen facilities, significant tenant improvements were made to the Premises, which were funded by Indigo in the approximate cost of $660,000.00 ("Tenant Improvements").

14. To help equip the Premises, on October 1, 2019, Indigo entered into that certain Equipment Lease Agreement with Cascade Property Group for the purchase of equipment at a price of $400,000.00. A true and correct copy of the Equipment Lease Agreement is attached hereto as Exhibit "2" [1]

15. Indigo's interest in the Tenant Improvements were evidenced by a Note dated February 11, 2020.[2] The originally principal amount of the Note was $30,000.00. The current outstanding balance owed on the Note as of the Petition Date was approximately $320,920.00.

16. Additional funding provided by Indigo for the Tenant Improvements was obtained through a loan obtained from Columbia Bank in the original amount of $450,000.00. That loan is secured by a Security Agreement which gave Columbia a global security interest in substantially all of Basalt's assets, and required that Indigo subordinate its lien position to that of

---

[1] Equipment Lease was originally with three Lessor's – thereafter Indigo acquired the other two Lessors interest in the Lease.

[2] The Note is an Exhibit to Proof of Claim No. 3 filed by Indigo in this case.

In re Basalt, Case No. 22-00842
Estate of Basalt v. Columbia Hospitality Inc. and 1102 LLC
Complaint re; breach of operating agreement; unjust enrichment

Columbia.  True and correct copies of Columbia Bank's loan documentation evidencing the debt and the security interest are attached hereto as Exhibit "3" and incorporated herein by reference.

17. In addition to requiring that Indigo subordinate its security interest in the Tenant Improvements to Columbia Bank, the bank also required that the Townsends provide a personal guarantee for loan provided.

18. On or about December 16, 2020, Basalt entered into that certain Management Agreement with Columbia (the "Management Agreement"), wherein Columbia agreed to provide certain goods and services to Basalt in connection with the management of the operation of the restaurant.  A true and correct copy of the Management Agreement is attached hereto as Exhibit "4" and incorporated herein by reference.

19. Article III, Section 3.02(a) of the Management Agreement provides:

> In addition to the other termination rights set forth in this Agreement, this Agreement may be terminated prior to expiration under the following circumstances:
>
> > (a)  By either party, if the other party martially breaches any term of this Agreement or defaults in the performance of any obligation under this agreement that can be cured with the payment of money and fails to cure such breach within ten days following notice thereof by the non-defaulting party.

20. Article V, Section 5.02 of the Management Agreement, provides:

> Owner [Basalt] shall ensure that sufficient working capital funds exist and are available to Manager at all times to meet the operating needs of the Restaurant, which amount shall be no less than $50,000.00 (the "Minimum Balance"). Owner shall, on or before Manager's commencement of day-to-day operation of the Restaurant and from time to time during the Term, on Manager's request, deposit funds into the Operating Accounts(s) sufficient to allow the uninterrupted operation of the Restaurant in accordance with the terms of this Agreement and a

In re Basalt, Case No. 22-00842
Estate of Basalt v. Columbia Hospitality Inc. and 1102 LLC
Complaint re; breach of operating agreement; unjust enrichment

23-80023-WLH    Doc 1    Filed 12/27/23⁺    Entered 12/27/23 19:52:56    Pg 4 of 7

manner consistent with the Operating Standard. Owner's deposit shall be made within ten (10) days after receiving Manager's funding request. If at any time Manager, in the exercise of reasonable diligence, projects that a shortfall in working capital is reasonably likely, then Manager shall promptly notify Owner of such projection and shall recommend to Owner an amount to Owner to reasonably avoid such shortfall.

21. The Premises Lease was subsequently amended on or about April 9, 2022, to add a new Section 29 which provided:

Basalt will continue to engage Columbia Hospitality to operate the restaurant and catering operations, according to the terms of the Management Agreement between Basalt Dining and Columbia Hospitality dated December 16, 2020. It is understood that there may be modification to the compensation arrangements stated in Article IV.

22. On or about September 6, 2022, without prior notice and opportunity to cure, Columbia via a phone call to Ruth Townsend advised her that Columbia would be terminating the Management Agreement and closing the restaurant unless $100,000 of working capital was deposited by September 7, 2022.

23. Prior to September 7, 2022, Columbia in fact closed the restaurant and terminated all of the employees.

24. On September 7, 2022, Steve Townsend and the Debtor received a the written Notice of Termination (the "Notice") from Columbia's legal counsel which restated the demands made to Ruth Townsend on the phone on September 6, 2022. A true and correct copy of that letter is attached hereto as Exhibit "5" and is incorporated herein by reference.

25. The Notice alleges that Columbia in fact had given prior notice as required under the Management Agreement via a written notice allegedly provided on July 19, 2022. Debtor and plaintiffs deny that any proper notice of demand for working capital deposit, default and cure

In re Basalt, Case No. 22-00842
Estate of Basalt v. Columbia Hospitality Inc. and 1102 LLC
Complaint re; breach of operating agreement; unjust enrichment
23-80023-WLH    Doc 1    Filed 12/27/23    Entered 12/27/23 19:52:56    Pg 5 of 7

was provided, and allege that Columbia breached its duties under the Management Agreement and wrongfully terminated that contract.

26. The wrongful termination of the Management Agreement by Columbia caused Debtor to default under the terms of the Lease Agreement, such that the Debtor was unable to cure the default.

27. Without the management company in place as required under the terms of the Lease Agreement, 1102 LLC thereafter declared a default under the Lease, which the Debtor attempted to prevent the termination of by filing for bankruptcy protection under Chapter 7. A true and correct copy of the Notice of Default from 1102 is attached hereto as Exhibit "6" and is incorporated herein by reference.

28. Under the terms of the Lease Agreement, the Debtor could not attempt to resume operations under the Lease Agreement by attempting to reorganize through Chapter 11.

29. As a result of the breach by Columbia of the Management Agreement, the Debtor and Indigo's interest in the Leasehold Improvements and other assets have either forfeited or liquidated at a substantial discount.

30. As a further result of the breach, the Townsend were required to honor their guarantee to Columbia Bank, paying out a total of $166,680.36 to satisfy the guarantee.

## FIRST CAUSE OF ACTION

### (Breach of Management Agreement)

31. Plaintiff re-alleges paragraphs 1 through 30 as if fully set forth herein.

32. Plaintiff asserts that Columbia's breach of the Management Agreement has caused it substantial damages, including compensatory and consequential damages arising from the breach that caused a substantial diminution of the value of the assets owned and leased by Basalt in an amount to be proven at trial.

## =SECOND CAUSE OF ACTION

### (Unjust Enrichment)

In re Basalt, Case No. 22-00842
Estate of Basalt v. Columbia Hospitality Inc. and 1102 LLC
Complaint re; breach of operating agreement; unjust enrichment

23-80023-WLH    Doc 1    Filed 12/27/23⁶⁻    Entered 12/27/23 19:52:56    Pg 6 of 7

1.  Plaintiff re-alleges paragraphs 1 through 32 as if fully set forth herein.

2.  Because of Columbia's breach and termination of the Management Agreement, 1102 LLC was entitled to terminate the Lease. Nevertheless, as a result of the termination of the Lease, 1102 LLC has been unjustly enriched by the value of the Leasehold Improvements as of the date of the Lease termination in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.  Finding that Columbia breached the Management Agreement causing Basalt damages in an amount to be proven in Court;

2.  Finding that 1102 LLC has been unjustly enriched by an amount to be proven in Court.

3.  Directing that the Defendants to pay the Basalt bankruptcy estate damages on account the harm cause to the Debtor in an amount to be proven in court; and

4.  Any further relief that the Court deems just and equitable.

DATED this 27th day of December, 2023.

KIMEL LAW OFFICE
/s/ Metiner G. Kimel

_____
METINER G. KIMEL
WSBA #21280

In re Basalt, Case No. 22-00842
Estate of Basalt v. Columbia Hospitality Inc. and 1102 LLC
Complaint re; breach of operating agreement; unjust enrichment

23-80023-WLH    Doc 1    Filed 12/27/23⁷⁻    Entered 12/27/23 19:52:56    Pg 7 of 7